UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANNY A. WING, SR.,

                    Plaintiff,

        v.

JAMEY MCGINTY, et al.,

                    Defendants.

CASE NO. 3:18-cv-05011-RJB-DWC

REPORT AND RECOMMENDATION

Noting Date: October 26, 2018

The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United States Magistrate Judge David W. Christel. Plaintiff Danny A. Wing, Sr., represented by counsel, initiated this civil rights action on October 26, 2017. Dkt. 1.

Plaintiff argues his First, Sixth, and Fourteenth Amendment protections were violated when Defendants recorded and listened to several telephone conversations between him and his attorneys. However, Plaintiff has not shown his ability to contact people outside the Lewis County Jail was infringed, has not shown he suffered prejudice because of interference with his attorney-client interactions, and has not shown the recording imposed an atypical and significant hardship on him. Therefore, Plaintiff has failed to show his constitutional rights were violated

and the Court recommends Defendants' Motion for Summary Judgment ("Motion") (Dkt. 11) be granted as to all Plaintiff's federal claims.  The Court further recommends declining supplemental jurisdiction over Plaintiff's state law claim under the Washington Privacy Act and dismissing that claim without prejudice.

## I.     Background

Plaintiff filed this action on January 5, 2018. Dkt. 1. Defendants filed an answer on January 19, 2018, Dkt. 4, and the Court entered a pretrial scheduling order, Dkt. 5. In his Complaint, Plaintiff argues his First, Sixth, and Fourteenth Amendment rights were violated when his confidential telephone conversations with his attorneys were recorded and listened to by jail staff. Dkt. 1. Defendants have now filed their Motion, arguing Plaintiff has not shown his First Amendment right to interact with individuals outside the Lewis County Jail has been infringed, has failed to show prejudice necessary to demonstrate a Sixth Amendment violation, and has not shown the recording of his phone calls amounted to an atypical and significant hardship in violation of the Fourteenth Amendment. Dkt. 11. Plaintiff filed a Response, but only addressed the Fourteenth Amendment Claim. Dkt. 17.

## II.     Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

1  the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

2  (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

3  metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

4  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

5  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

6  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

7  626, 630 (9th Cir. 1987).

8       In addition, if a party fails to respond to a motion, the Court may construe that failure to

9  respond as an admission the motion has merit. LCR 7(b)(2).

10  **III.   Discussion**

11      A.   First Amendment Allegations

12       Plaintiff alleges, in a conclusory manner, Defendants' actions violated his First

13  Amendment rights. The Ninth Circuit has held, "sensibly and expansively," prisoners have a first

14  amendment right "to communicate with persons outside prison walls." *Valdez v. Rosenbaum*,

15  302 F.3d 1039, 1048 (9th Cir. 2002). "Use of a telephone provides a *means* of exercising this

16  right." *Id.* (emphasis in original). This right is subject to limitations that are "'reasonably related

17  to legitimate penological interests,'" *Id.* at 1049 (quoting *Turner v. Safley*, 482 U.S. 78, 89

18  (1987) (emphasis in original), and any restrictions may be only as broad as is necessary to

19  protect the legitimate penological interest, *Procunier v. Martinez*, 516 U.S.396, 413 (1974).

20       The undisputed evidence shows Plaintiff was able to place numerous calls out of the

21  Lewis County Jail from November 2014 to December 2015, and from June 2017 to October

22

23

24

2018. *See* Dkt. 18, pp. 65-88.; Dkt. 19, pp. 5-71.[1] The undisputed evidence also shows numerous calls made by Plaintiff were either listened to or "burn[ed]/download[ed]" by Defendants between November 8, 2014 and December 17, 2015. *Id*. at pp. 72-88; Dkt. 19, pp. 5-71. The undisputed evidence supports Plaintiff's contention that at least thirteen of the conversations Defendants recorded and either listened to in part, downloaded, or both, were calls to Plaintiff's attorneys' telephone numbers. Dkt. 18, pp. 78-80, 86-87; Dkt. 19, pp. 5, 68-69, 73-74, 76-77. It is also undisputed two of Plaintiff's counsel provided no affirmative permission to have the conversations recorded. Dkt. 19, pp. 73-74 (Thayer Dec.); pp. 76-77 (Pascoe Dec.). There is no evidence, and indeed no contention, Plaintiff's ability to use the telephone or contact his attorneys was blocked by Defendants.

Here, Defendants argue Plaintiff has not stated a claim under the First Amendment because he has not shown he was prevented from communicating with his attorneys -- rather, some of his calls with his attorneys were recorded. Dkt. 11, p. 6; *see Valdez*, 302 F.3d at 1048 ("We 'sensibly and expansively' define the First Amendment right at issue . . . as the right to communicate with persons outside prison walls"). As a preliminary matter, Plaintiff has filed no opposition to Defendants' Motion as to this claim, which the Court interprets as an admission Defendants' Motion has merit. Dkt. 17; LCR 7(b)(2). The undisputed evidence shows Plaintiff regularly made calls, both to his attorneys and to other unidentified parties. Though it is undisputed some of them were recorded, there is no indication in the record that his ability to talk with persons outside the jail has ever been prevented. Plaintiff has also provided no evidence to indicate the recording itself prevented him from communicating with his attorneys. Indeed,

---

[1] Plaintiff has submitted records of Plaintiff's phone activity for the dates noted above; he has provided no records from the period from December 2015 to June 2017 and does not allege he was deprived telephone access during that time Dkts. 1, 17.

1   Plaintiff has affirmatively alleged he was able to communicate with his attorneys, even though

2   he was sometimes recorded while doing so. Dkt. 1, pp. 5-6. Because there is no evidence

3   Plaintiff's ability to contact people outside the jail has been restricted in any way, Plaintiff's First

4   Amendment protections with regard to his use of the telephone have not been violated. *See*

5   *Hopper v. Melendez*, 2007 WL 4111366, at *6 (W.D. Wash. Nov. 16, 2007) (finding no First

6   Amendment claim where a "plaintiff had the ability to make collect calls and had contact with

7   the outside world," and finding the issue of confidential calls to attorneys a separate issue not

8   implicating the First Amendment) (citing *Valdez*, 302 F.3d at 1047-48). Plaintiff's continual

9   ability to contact his attorneys and others outside the Lewis County Jail indicates his First

10  Amendment rights have not been violated.

11          Therefore, Plaintiff has failed to demonstrate that his First Amendment rights were

12  violated when some of his phone calls with attorneys were recorded. Accordingly, the Court

13  recommends Plaintiff's First Amendment claim be dismissed.

14          B.  Sixth Amendment Allegations

15          Plaintiff alleges his Sixth Amendment rights were violated when Defendants recorded

16  and listened to portions of his confidential conversations with his attorneys. Because it is likely

17  Plaintiff's claim is barred by *Heck v. Humphrey*, the Court will make a determination on the

18  *Heck* issue before proceeding to the merits of the claim.

19          1.  *Barred Pursuant to* Heck v. Humphrey[2]

20          Plaintiff contends his right to counsel was violated when Defendants recorded and

21  listened to portions of Plaintiff's confidential conversations with his attorneys. Plaintiff may only

22  _____

23          [2] The Court notes this Report and Recommendation only discusses *Heck v. Humphrey* in the context of
    Plaintiff's Sixth Amendment allegations. This is because Defendants raised that issue only as to the Sixth

24  Amendment claims, not as to the other claims. *See* Dkt. 11, p. 6.

recover damages under § 1983 for allegedly unconstitutional imprisonment, or for any other harm caused by actions whose unlawfulness would render the imprisonment invalid, if he can prove the conviction or other basis for confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A "§ 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of his suit (state conduct leading to the conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Here, Defendants have argued Plaintiff's Sixth Amendment claims are barred pursuant to *Heck*. Again, Plaintiff has not disputed Defendants' argument, and the Court interprets this as an admission the Motion has merit. LCR 7(b)(2). Read liberally, Plaintiff's Sixth Amendment claim argues his right to effective counsel was violated when Defendants recorded and listened to portions of his confidential attorney-client conversations. *See* Dkt. 1. However, a finding that Plaintiff was denied effective assistance at trial would necessarily imply the invalidity of his underlying conviction. If the Court concludes Plaintiff may recover because his trial counsel was ineffective, the Court would effectively make a ruling Plaintiff's right to counsel at trial was violated, thus implying the trial itself was unfair. *See Strickland v. Washington*, 466 U.S. 668, 685 (1984) (noting "[t]he right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment" because counsels' knowledge is necessary to allow defendants the "'ample opportunity to meet the case of the prosecution. . . .'"). A ruling implying the trial was unfair necessarily implies Plaintiff's underlying conviction was invalid. Therefore, a finding in

favor of Plaintiff is barred pursuant to *Heck* insofar as he raises a Sixth Amendment claim.

Accordingly, the Court recommends Plaintiff's Sixth Amendment claims be dismissed.

### 2. *Claim on the Merits*

Even if Plaintiff's Sixth Amendment claim is not barred by *Heck*, Plaintiff's claim has no

merit. "Despite the high approbation our system has for the attorney-client privilege, the

Supreme Court has twice held that government invasion of that privilege or the defense camp is

not sufficient by itself to cause a Sixth Amendment violation." *United States v. Hernandez*, 937

F.2d 490, 493 (9th Cir. 1991). "Rather, the right is only violated when the intrusion substantially

prejudices the defendant." *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980). Plaintiff

must show both deliberate interference with the attorney client interaction, as well as substantial

prejudice. *Williams v. Woodford*, 384 F.3d 567, 584-85 (9th Cir. 2002). To show substantial

prejudice, Plaintiff must show: (1) evidence gained through the interference was used against the

defendant at trial; (2) the prosecution used confidential information pertaining to the defense

plans and strategy; (3) the government's interference destroys the defendant's confidence in his

attorney; or (4) other actions designed to give the prosecution an unfair advantage at trial. *Irwin*,

612 F.2d at 1187.

Plaintiff must establish a prima facie showing of substantial prejudice. *United States v.

Danielson*, 325 F.3d 1054, 1071 (9th Cir. 2003). Mere possession of otherwise confidential

information is not sufficient. *Id*. Rather, Plaintiff must demonstrate a government agent "acted

affirmatively to intrude into the attorney-client relationship and thereby to obtain the privileged

information." *Id*.

The undisputed evidence shows Plaintiff placed numerous calls out of the Lewis County

Jail. *See* Dkt. 8, pp. 65-71. The evidence also shows Plaintiff's conversations were regularly

recorded, and at least thirteen of the recorded calls were calls between Plaintiff and his attorneys. Dkt.18, pp. 78-8-, 86-87; Dkt. 19, pp 5, 67, 73-74, 76-77. It is also undisputed at least a portion of one of the conversations between Plaintiff and his counsel was listened to by non-party Deputy Prosecuting Attorney William Halstead. *Id*. at p. 68. However, the evidence on the record does not provide further details as to whether non-party Halstead was involved with Plaintiff's case, what information was disclosed in the call, whether the information was privileged, whether non-party Halstead knew he was listening to an attorney-client conversation, or whether any information conveyed between Plaintiff and his attorneys was utilized by non-party Halstead to the disadvantage of Plaintiff.

Here, Defendants argue Plaintiff has not shown prejudice, and Plaintiff has provided nothing to dispute that argument. Plaintiff's Complaint contains allegations his conversations with several attorneys were recorded. *See* Dkt. 1. Neither his Complaint nor the record have any indication Defendants used those conversations against Plaintiff in any way. *Irwin*, 612 F.2d at 1187. He does not allege or provide evidence the prosecution used confidential information to discover Plaintiff's trial strategy, and he has not explained the interference caused any sort of ill effect on his relationship with and trust in his attorney. *Id*. Finally, the evidence does not reflect the recorded conversation produced an unfair advantage for the prosecution. *Id*. Though the undisputed evidence suggests non-party Halstead listened to at least a portion of Plaintiff's recorded conversation, the undisputed evidence does not show Plaintiff suffered any substantial prejudice from the recording. There is nothing in the record to indicate whether non-party Halstead was involved with Plaintiff's case, what information, if any, he acquired, and whether that information was or was not privileged. Further, there is no evidence any of the conversations were ever used to harm Plaintiff's case or the prosecution was given an unfair advantage because

of the conversation. Plaintiff has not made a prima facie showing of prejudice. *See Silva v. King County*, 2008 WL 4534362, at *4 (W.D. Wash. Oct. 7, 2008) (finding a prisoner did not state a claim under the Sixth Amendment because "[n]owhere does [P]laintiff describe how the monitoring and recording of his calls to his attorney actually prejudiced him").

Further, Plaintiff has not provided any opposition to Defendants' Sixth Amendment arguments. The Court takes this lack of opposition as an admission Defendants' Motion has merit. LCR 7(b)(2). Thus, even if Plaintiff was able to prove the government interfered with his attorney-client relationship, he has provided nothing to establish prejudice. Therefore, Plaintiff has provided neither allegations nor evidence that show a violation of his Sixth Amendment rights, and his failure to respond to Defendants' Motion indicates Defendants' Motion has merit. Accordingly, the Court recommends Plaintiff's Sixth Amendment claims be dismissed.

C. Fourteenth Amendment Allegations

Plaintiff argues the recording of his attorney conversations violates his Fourteenth Amendment protections because it violated a state-created liberty interest. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that state law creates liberty interests deserving protection under the Fourteenth Amendment's Due Process Clause only when the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from his or her sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483-84; *see also Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007); *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003); *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Neal v. Shimoda*, 131 F.3d 818, 827-28 (9th Cir. 1997); *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (per curiam).

1    "There is no single standard for determining whether a prison hardship is atypical and

2    significant, and the 'condition or combination of conditions or factors [of the alleged hardship] . .

3    . requires case by case, fact by fact consideration.'" *Ramirez,* 334 F.3d at 861 (quoting *Keenan*

4    *v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)). A violation of Due Process will only be found if the

5    violations imposes an actual atypical and significant hardship on a prisoner. *Sandin*, 515 U.S. at

6    484. When undertaking this analysis, the Court considers three factors: (1) whether the

7    challenged conduct "mirrored those conditions imposed upon inmates in administrative

8    segregation and protective custody" demonstrating that the prison acted within its discretionary

9    authority; (2) the duration of the challenged conduct; and (3) whether the conduct will affect the

10   length of the prisoner's sentence. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

11   Plaintiff argues state law has created a liberty interest in Plaintiff being free from having

12   any of his telephone conversations, and particularly those conversations with his attorney,

13   recorded by Defendants. Dkt. 17, pp. 4-7. He argues Washington has passed a statute mandating

14   "[a]ll units of local government that own or operate adult correctional facilities shall . . . adopt

15   standards for the operation of those facilities." RCW 70.48.071. The statute also includes a

16   provision requiring all facilities to abide by their adopted standards of operations. *Id*. Plaintiff

17   has provided evidence Defendants promulgated Custodial Care Standard 8.01(4), which states in

18   pertinent part: "[T]elephone conversations shall not be monitored, tape recorded, or spot-checked

19   except by court order." Dkt. 18, p. 58. Plaintiff argues the mandate from the state to promulgate

20   standards, the requirement to abide by the standards, and the promulgation of a standard

21   prohibiting telephone recordings created a liberty interest that is protected by due process. Dkt.

22   17, p. 6. He further states in his Response "the Due Process Clause must have some role

23   regarding telephone conversations between an[] inmate and his attorney, because such actions

24

1  constitute 'atypical and significant hardship on the inmate.'" Dkt. 17, p. 7 (quoting *Sandin*, 515

2  U.S. at 484).

3         Even if a liberty interest has been created, Plaintiff has failed to show how deprivation of

4  that interest constituted an atypical and significant hardship relative to the other incidents of

5  prison life. *Sandin*, 515 U.S. at 484. First, it is undisputed that Defendants regularly recorded

6  Plaintiff's phone conversations. *See* Dkt. 18, pp 65-88. It is also undisputed some of those

7  conversations were between Plaintiff and his attorney, and that some of those conversations were

8  downloaded. *Id.*; Dkt. 13, ¶¶ 2-3; Dkt. 14, ¶¶ 2-3; Dkt. 15, ¶¶ 2-3; Dkt. 16, ¶¶ 2-3. It is further

9  undisputed several Defendants may have, in fact, listened to a portion of the alleged

10  conversations. *See* Dkt. 11 (Defendants' Motion including no challenge as to whether any

11  Defendants listened to Plaintiff's conversations); Dkt. 13 (Defendant Romine stating she does

12  not recall listening to Plaintiff's conversations, but stating, if she had listened to a conversation

13  between Plaintiff and an attorney, she would have stopped immediately); Dkt. 14 (Defendant

14  McGinty stating the same). Defendants have also provided evidence, and Plaintiff does not

15  dispute, that all calls subject to recording include the following audio message before the call is

16  connected: "This is a call from and paid for by [prisoner name] an inmate at Lewis County Jail.

17  This call is subject to recording and monitoring. If you don't wish to talk hang up now. Thank

18  you for using telmate." Dkt. 16, ¶ 3. Finally, Defendants have provided evidence the Lewis

19  County Jail does not monitor attorney phone calls if the attorney has registered his or her number

20  with the Jail. *Id.* at ¶4. However, if the number is not registered, the call would be recorded and

21  the above noted warning provided. *Id.*

22         Here, Plaintiff has not explained how or in what way the recording of his calls actually

23  burdened or otherwise impacted him. He has provided no evidence it harmed his ability to

24

1  interact with his attorney and he has provided nothing to show how the recording affected him in

2  any other way. Rather, Plaintiff appears to allege his calls with his attorney were recorded, and

3  that the recording of the calls in itself is enough to constitute an "atypical and significant

4  hardship." Dkt. 17, p. 7. The Court disagrees.

5       A jail has a legitimate security interest in recording outgoing prisoner phone calls. *See*,

6  *e.g.*, *Van Poyck*, 77 F.3d at 291 (finding the recording of phone calls reasonable under the Fourth

7  Amendment) (citing several Second Circuit cases). Outgoing calls are monitored regularly in the

8  Lewis County Jail and the phone system provides an audio warning to the participants on the call

9  when the call will be recorded. Further, Defendants have provided evidence they will

10 automatically not record attorney conversations when the attorney has registered their number

11 with the jail. With the evidence read in the light most favorable to Plaintiff, the Court does not

12 conclude a recording of attorney phone calls, when the jail provides a warning it will be recorded

13 and has provided an option for avoiding the recording of the conversation by registering an

14 attorney's number, constitutes an atypical and significant hardship relative to the other incidents

15 of prison life. *See Evans v. Inmate Calling Solutions*, 2011 WL 7470336, at *22 (D. Nev. July

16 29, 2011) (finding the screening of phone calls to ensure they were actually legal phone calls did

17 not amount to an atypical and significant hardship). Further, Plaintiff has made no claim his

18 ability to interact with his attorney was disrupted as a result of the recording, and thus has failed

19 to show any intrusion into his attorney-client interaction constituting an atypical and significant

20 hardship. *See Miller v. Taylor*, 2016 WL 111403, at *3 (D. Alaska Jan. 11, 2016) (finding no due

21 process violation when a plaintiff's conversations with his attorney were recorded, but his

22 interaction was not chilled by the recording).

23

24

1    In addition, the Court notes that even a complete deprivation of telephone privileges does

2    not amount to an atypical and significant hardship under the Fourteenth Amendment. *Macedon v.*

3    *Cal. Dep't of Corr.*, 67 Fed. App'x 407, 408 (9th Cir. 2003). Considering how much more

4    extreme the denial of all telephone privileges is compared to the mere recording of telephone

5    conversations, the Court does not conclude the recording of a conversation, in itself, constitutes

6    an atypical and significant hardship relative to the other incidents of prison life. Therefore,

7    Plaintiff has failed to demonstrate Defendants violated his Fourteenth Amendment rights when

8    they recorded his conversations with his attorneys. Accordingly, the Court recommends

9    Plaintiff's Fourteenth Amendment claims be dismissed.

10    D.  Municipal Liability

11    Plaintiff also includes Lewis County itself as a Defendant in this action. Municipalities

12    are subject to suit under § 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658,

13    690 (1978). A municipality may only be liable if its policies are the "'moving force [behind] the

14    constitutional violation.'" *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *v. New*

15    *York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)). In order to state a claim against a

16    county or other municipal entity a plaintiff must show that defendant's employees or agents

17    acted through an official custom, or policy that permits deliberate indifference to, or violates,

18    plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See Monell,* 436 U.S. at

19    690-91; *Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991).  To establish

20    municipal liability under § 1983, a plaintiff must show (1) deprivation of a constitutional right;

21    (2) that the municipality has a policy; (3) the policy amounts to deliberate indifference to

22    plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional

23    violation.  *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

24

1    Here, the Court has already concluded Plaintiff has not shown he suffered a deprivation

2    of constitutional rights when Defendants recorded and listened to his confidential telephone

3    conversations. Thus, even if Lewis County has a policy Defendants followed in recording

4    Plaintiff's phone calls, Plaintiff has not shown that the policy was the driving force behind any

5    constitutional violation. Therefore, Plaintiff has not stated a claim against Lewis County.

6    Accordingly, the Court recommends Plaintiff's claims against Lewis County be dismissed.

7    E.   Washington Privacy Act

8    Plaintiff also alleges Defendants' actions violated the Washington Privacy Act under

9    RCW 9.73.030(1). Dkt. 1, p. 8. A district court has discretion over whether to exercise

10   supplemental jurisdiction over state law claims arising from the same set of operative facts that

11   supports a federal claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009)

12   (citing 28 U.S.C. §§ 1367(a), (c)). Ordinarily, when a district court dismisses "all claims

13   independently qualifying for the exercise of federal jurisdiction," it will dismiss all related state

14   claims, as well. *Artis v. District of Columbia*, 138 S. Ct. 594, 597-98 (2018) (citing 28 U.S.C. §

15   1367(c)); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009). Although

16   the court is not required to dismiss the supplemental state law claims, "in the usual case in which

17   all federal-law claims are eliminated before trial, the balance of factors to be considered under

18   the pendent jurisdiction doctrine – judicial economy, fairness, convenience, and comity – will

19   point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-*

20   *Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

21   Here, the Court has recommended granting Defendants' Motion on all of Plaintiff's

22   federal claims. *See* Sections II(A) & (B), *supra*. Accordingly, as none of the factors under the

23   pendent jurisdiction doctrine support exercising supplemental jurisdiction, the Court

24

1  recommends declining supplemental jurisdiction over Plaintiff's state law claims under the

2  Washington Privacy Act and dismissing those claims without prejudice.

3        F.  Qualified Immunity

4        Because the Court has recommended Plaintiff's claims be dismissed on the merits, the

5  Court declines to make a determination as to qualified immunity at this time.

6  **IV.  Conclusion**

7        Based on the foregoing, the Court concludes Plaintiff has failed to demonstrate the

8  recording of his telephone conversations rises to the level of a constitutional violation.

9  Accordingly, the Court recommends Defendants' Motion (Dkt. 11) be granted as to all Plaintiff's

10  federal claims and recommends those claims be dismissed with prejudice. The Court further

11  recommends declining supplemental jurisdiction over Plaintiff's state law claim under the

12  Washington Privacy Act and dismissing those claims without prejudice.

13        Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

14  fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

15  6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

16  review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

17  imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

18  October 26, 2018, as noted in the caption.

19

20        Dated this 9th day of October, 2018.

21

22

23  David W. Christel
    United States Magistrate Judge

24

REPORT AND RECOMMENDATION - 15